## GEARY et al. v. WORD.   (No. 2258.)

(Court of Civil Appeals of Texas.   Amarillo.
Feb. 6, 1924.   Rehearing Denied
March 12, 1924.)

1. **Courts** ⊚⟼480(1)—**Statute requiring writ to be returnable in county where "suit" pending inapplicable where injunction only ancillary.**

Where the injunction applied for is merely ancillary to the main purpose of the suit, it is not properly a "suit" within Vernon's Sayles' Ann. Civ. St. 1914, art. 4653, requiring writ of injunction to stay proceedings to be returnable to court where suit is pending or judgment was rendered.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

2. **Venue** ⊚⟼8 — **Action for trespass properly brought in county where alleged acts were committed.**

Where posting of notices of sale of mortgaged live stock after payment of mortgage would have been a trespass, and a sale of them would have been a conversion, and if advertising of it would have injured plaintiff's credit there would have been a trespass, his action against defendants for injury to his credit and standing, for conspiracy to commit trespass in his ownership, was properly brought in the county where the alleged trespass was committed, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subds. 9, 30.

3. **Pleading** ⊚⟼111—**Amount of damages immaterial on issue of venue.**

The amount of damages which resulted to plaintiff in an action in trespass is immaterial on the issue of venue.

Appeal from District Court, Randall County; Henry S. Bishop, Judge.

Action by C. T. Word against J. C. Geary and another. From an order overruling plea of privilege, defendants appeal. Affirmed.

Tatum & Strong, of Dalhart, for appellants.

Underwood, Jackson & Johnson, of Amarillo, for appellee.

HALL, C. J. On March 18, 1922, appellee, Word, executed and delivered to appellant Geary his promissory note in the sum of $1,986, due November 1, 1922, and at the same time to secure the payment of said note executed a chattel mortgage, conveying to Geary certain live stock. The mortgage was duly recorded in Randall county, the domicile of the mortgagor, Word. Geary resided in Moore county, and prior to the 10th day of January, 1923, placed the said note with the First State Bank of Dumas, as collateral security to a certain indebtedness the bank held against him. Thereafter, on or about the 8th day of May, 1922, the bank and Geary caused notices to be posted in Randall county, and a copy of said notice to be published in the Randall County News, giving notice on the 22d day of May, 1923, said live stock would be sold at the courthouse door of Randall county, in the town of Canyon, between the hours of 10 o'clock a. m. and 4 o'clock p. m. The notice describes the live stock, and recites that the sale will be made in pursuance to the terms of the chattel mortgage executed by Word to Geary for the purpose of paying off said note. On the day of the sale, but before the mortgagee had sold the property, Word filed this suit and prayed for an injunction restraining the sale.

The material facts alleged, in addition to those above stated, are: That on January 10, 1923, the bank and Geary demanded of appellee that he pay his said note, and the plaintiff alleges that said note was paid to said bank in Amarillo, Tex.; that it was agreed between plaintiff and the defendants, acting through T. F. Campbell, the cashier of said bank, that the said note would be marked, "Paid" and canceled and returned to appellee at Amarillo, and that said mortgage would be canceled upon the records of Randall county; that thereafter the defendants, acting together, conspired to injure, harass, and damage appellee and his business, and further conspired together to convert said live stock to their own use and benefit, and conspired to commit trespass against plaintiff in his ownership of said live stock, and in furtherance of said conspiracy had posted and published said notice of sale, and that such acts were fraudulently, maliciously, and willfully done for the purpose of injuring, harassing, and damaging appellee. Plaintiff alleges that he is and has been for a number of years engaged in the cattle business in Randall county; that such threatened foreclosure posting and publishing notice has damaged him and embarassed him in his business, and injured his credit generally, and particularly in Randall county, in the sum of $5,000, and because said acts were maliciously and willfully done he has suffered exemplary damages in the sum of $10,000.

The court granted a temporary injunction on the 21st day of May, 1923, upon an ex parte hearing, and ordered the issuance of the writ. Geary and the bank answered on appearance day in the district court of Randall county, said answer containing a plea to the jurisdiction of the court, a plea of privilege to be sued in Moore county, special exceptions to the petition, urging their right to be sued in Moore county, general demurrer, and the general issue. The plea of privilege was duly controverted, asserting that the district court of Randall county has jurisdiction under V. S. C. S. art. 1830, subd. 9, since it appears the plaintiff is su-

ing for a trespass committed by appellants in Randall county, and that he seeks to recover damages by reason of said trespass. There was a hearing during the term before the court, which resulted in the plea of privilege being overruled. Evidence was introduced upon the issue of payment, the plaintiff Word testifying that he sold to the bank, through Campbell, its cashier, certain hay and feedstuff which at the contract prices paid off and fully satisfied his indebtedness. Campbell testified that he agreed to take the hay and kaffir corn at a certain price, but that it had not been weighed, and that when weighed it showed to be worth only about $1,300.

[1] It is contended that, under article 4653, V. S. C. S., the venue of this action is in Moore county, that being the domicile of the defendants. The rule is that, where the injunction applied for is merely ancillary to the main purpose of the suit, it is not properly a suit for an injunction within this article. International & Great Northern Ry. Co. v. Anderson Co. (Tex. Civ. App.) 150 S. W. 248; Id., 106 Tex. 60, 156 S. W. 499. The effect of Word's pleading is that through the sale of the feed his note has been paid and should be canceled; that by reason of the conspiracy and trespass in wrongfully advertising the property for sale he has been damaged in his credit and business in the sum of $5,000 and by reason of the malice and fraud of the defendants he has suffered exemplary damages in the sum of $10,000. His prayer is for a temporary restraining writ, and that upon a final hearing the injunction be made permanent, "and that he have judgment against the defendants, jointly and severally, as herein alleged, and for such other and further relief, both in law and in equity, as he may be justly entitled to."

The evidence introduced upon the hearing is sufficient to sustain the trial court's implied finding that under the contract for the sale of the hay and kaffir corn the note secured by the mortgage had been more than satisfied, and that Word was not indebted to either Geary or the bank. We do not intend that this holding shall be taken as a finding of fact binding either the court or the jury upon a trial of the case upon its merits.

[2] Since the venue is not controlled by article 4653, V. S. C. S., the next inquiry is: Is it controlled by article 1830, subd. 9? It is provided in subdivision 30 of this article that, whenever in any law authorizing or regulating any character of action the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given. As heretofore stated this is not an action the sole purpose of which is to secure an injunction, and, if the foundation of the suit is a "tres-

pass for which a civil action damages may lie," then venue is properly laid in Randall county. In the case of Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618, the court said that the word "trespass" as used in subdivision 9 has a signification in law which embraces all cases where injury is done to the person or to property, and is the indirect result of wrongful forces. The court further said:

"We presume the exception was made in the interest of the injured party, and not of the wrongdoer; and we see no good reason why a distinction should be made between an injury resulting from intentional violence and one resulting from negligence. It occurs to us the consideration which induced the exception was that one who had been injured in his person or his property by the willful or negligent conduct of another should not be driven to a distant forum to get a redress of his wrongs. In the case of Ten Eyck v. Runk, 31 N. J. Law, 428, the Supreme Court of New Jersey construed the word 'trespass,' as used in a statute of that state, as descriptive of a class of actions, and held that it was not used in its most restricted sense, but applied, also, to all actions of trespass on the case. See, also, Cook v. Hertman, 2 Willson, Civ. Cas. Ct. App. § 770. If, as we think, the word 'trespass,' in our statute, was intended to embrace, not only actions of trespass proper, as known to the common law, but also actions of trespass on the case, it is clear that the action in this case was properly brought in Freestone county, and that the court had jurisdiction over the person of the defendant."

In the Cook Case, cited above, it appears that Horstman, who resided in Fayette county, had wrongfully constructed a fence in Milam county, and that Cook's three horses were killed by the fence. The court held that the gross negligence shown in the construction of the fence was such a trespass, committed in Milam county, as entitled Cook to sue them in that county, saying:

"In our opinion this includes not only a technical trespass, vi et armis, where the injury is the direct consequence of the wrongful act, but all wrongful acts from which even indirect injuries result. The difference between a technical trespass and a wrongful act from which an injury indirectly results relates only to the form of the action. In the former case it is an action of trespass, in the latter trespass on the case. In our system this distinction does not obtain. Our conclusion is, that any wrongful, unlawful act, which results either directly or indirectly to the injury of another, either in his person or his property, and for which a civil action in damages will lie, is a trespass within the meaning of the statute, and such civil action may be maintained in the county where the same was committed."

While in the subsequent case of Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645, the Supreme Court limited its definition of a trespass to acts of commission, eliminating negligent acts or acts of omission; the holding

that trespass as used in the statute includes all other wrongful acts coming within the common-law action of trespass on the case, has not been in any sense modified. It is held in Rotan v. Maedgen, 24 Tex. Civ. App. 558, 59 S. W. 585, that one who participates in a conspiracy to cheat and defraud another and to convert his personal property commits a trespass within the meaning of this statute. The rule is broadly announced in London v. Miller, 19 Tex. Civ. App. 446, 47 S. W. 734, Hubbard v. Lord, 59 Tex. 384, and Armendiaz v. Stillman, 54 Tex. 623, that a trespass within the meaning of the statute under consideration is any intentional wrong or injury to the person or property of another. So it is held in Cahn Bros. v. Bonnett, 62 Tex. 674, that the levy of an attachment wrongfully issued is a trespass in the county where levied. In First National Bank v. Childs (Tex. Civ. App.) 231 S. W. 807, where the act constituting the trespass was a threat to prosecute, the court said that force is not a necessary element in trespass under this article. And in Ward v. Odem (Tex. Civ. App.) 153 S. W. 634, the court said that trespass, as used in this statute, means any intentional wrong or injury to the person or property of another and includes conversion. The Supreme Court of the United States, in Angle v. Chicago, etc., Ry., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, holds that an act which in law is a wrongful act, and which, as a natural and probable consequence, produces injury or damages, will support an action of trespass on the case.

[3] If the notices were posted and published as the result of a conspiracy, this would be a trespass. A sale of the property under the power, contained in a mortgage which had been satisfied would be a conversion, and, if advertising it resulted in injury to Word's credit and business standing, this would be a trespass, and the extent and amount of the damage which resulted to him therefrom is immaterial upon the issue of venue.

The judgment is affirmed.